# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

|  |  |
|---|---|
| In the matter of: ) | |
| ) | Adversary Proceeding |
| OLD AUGUSTA DEVELOPMENT ) | |
| GROUP, INC. ) | Number <u>10-4094</u> |
| (Chapter 11 Case Number <u>10-41302</u>) ) | |
| ) | |
| *Debtor* ) | |
| ) | |
| ) | **FILED** |
| ) | Samuel L. Kay, Clerk |
| OLD AUGUSTA DEVELOPMENT ) | United States Bankruptcy Court |
| GROUP, INC. ) | Savannah, Georgia |
| ) | By lbarnard at 5:17 pm, May 16, 2011 |
| *Plaintiff* ) | |
| ) | |
| v. ) | |
| ) | |
| EFFINGHAM COUNTY and the ) | |
| EFFINGHAM COUNTY BOARD OF ) | |
| COMMISSIONERS, ) | |
| MYRA W. LEWIS, Commissioner, ) | |
| JEFFREY A. UTLEY, Commissioner, ) | |
| REGINALD S. LOPER, SR., ) | |
| Commissioner, ) | |
| VERNA H. ZEIGLER, Commissioner, ) | |
| and ) | |
| ROBERT E. BRANTLEY, Commissioner, ) | |
| ) | |
| *Defendants* ) | |

### <u>MEMORANDUM AND ORDER</u>

Old Augusta Development Group, Inc. ("OADG" or "Debtor") was formed

for the specific purpose of purchasing and developing 471 acres of land located in the

southern part of Effingham County, Georgia (the "Property"). The Property was part of a larger 560 acre tract ("Mill Creek") which was divided and sold to three different investors. Before Debtor purchased the Property, the Effingham County Commission issued a letter of intent, stating that the County intended to provide sewer and water to Mill Creek. As part of the purchase agreement, the buyers of three separate tracts in Mill Creek provided letters of credit to the County, evidencing lenders' willingness to finance the development of Mill Creek.

The County never provided sewer and water to Mill Creek, or by definition, to the Property. In the current case Debtor alleges that such failure to provide sewer and water to the Property is actionable under multiple theories. Debtor filed Chapter 11 in June of 2010, and did not schedule this claim in its original schedules, but later listed the claim in its amended schedules. Debtor filed this adversary proceeding on December 31, 2010, alleging multiple causes of action and requesting multiple forms of relief. Defendant Effingham County has filed a Motion to Dismiss for failure to state a claim upon which relief can be granted. Motion, A.P. Dckt. No. 11 (Feb. 17, 2011).[1] That Motion to Dismiss is pending, and has led to a thorough review of the pleadings and briefs. Based on the record before the Court and applicable authority, I make the following Findings of Fact and Conclusions of Law, and conclude that I should abstain from hearing this proceeding.

---

[1] References in this Order to the docket in the adversary proceeding appear in this format: "A.P. Dckt. No. ___." References to the Chapter 11 case docket appear in this format: "Case Dckt. No. ___."

## FINDINGS OF FACT

Gregg Howze was the Chairman of the Effingham County Board of Commissioners in December of 2004. GEFA Loan Applications, A.P. Dckt. No. 1-2, Exh. D & F. In that capacity he requested two loans from the Georgia Environmental Facilities Authority, totaling $25.5 million. Id. Those loans were requested to expand the County's sewer collection lines and water distribution system out to Mill Creek. Id. At some point after that application (but before February 8, 2005), Gregg Howze left his position as Chairman of the Effingham County Board of Commissioners and became the President of Gregg Howze, Inc. On February 8, 2005, Gregg Howze, Inc. purchased Mill Creek (which included the Property) from Mill Creek Hunting Preserve, Inc. Complaint, A.P. Dckt. No. 1-1 ¶13 (Dec. 31, 2010). The sale contract had a forty-five day due diligence period, during which Gregg Howze, Inc. could terminate. Real Estate Sales Agreement, A.P. Dckt. No. 1-2, Exh. A, ¶ 5.

Debtor alleges that Mr. Howze met with potential purchasers and assembled a group of investors to buy the 560 acre Mill Creek from Gregg Howze, Inc., in three pieces. Complaint, A.P. Dckt. No. 1-1 ¶ 15. Debtor alleges that Mr. Howze, in his individual capacity, purchased approximately ten acres from Gregg Howze, Inc., and that Darrell Morgan purchased approximately seventy-five acres from Gregg Howze, Inc. Id. at ¶ 19. Debtor alleges that Mr. Howze and six other individuals formed OADG to purchase the Property (the remaining 471 acres of Mill Creek) from Gregg Howze, Inc. Id. at ¶¶ 16-17. Mr. Howze was the President and Chief Executive Officer of OADG. Debtor alleges that

this group of investors—Mr. Howze, Mr. Morgan, and OADG—were unofficially known as the Mill Creek Developers ("MCD"). Id. at ¶ 25. Debtor alleges that during the due diligence period, MCD contacted Effingham County to determine whether the County would use the funds—requested by Mr. Howze as Chairman—to provide water and sewer to Mill Creek—at that time partially owned by Mr. Howze. Id. at ¶ 25. The County provided MCD with a letter (dated March 1, 2005) projecting that the water and sewer would be available to Mill Creek by July 2006. Letter, A.P. Dckt. No. 1-2, Exh. B. Debtor alleges that the County intended for OADG to rely on this letter in its decision to purchase the Property. In any event, OADG alleges that it purchased the Property from Gregg Howze, Inc. Complaint, A.P. Dckt. No. 1-1 at ¶ 39.

Debtor alleges that the County had applied for federal development loans which, as a prerequisite for disbursement, required the County to prove that the project had enough loan commitments, from lenders to developers, to complete the project. Id. at ¶¶ 41-49. Debtor alleges that it provided to the County a loan commitment from a lender, representing that the lender would provide OADG with a loan for the purchase and development of the Property. Id. at ¶ 39.

The County has never provided water or sewer to Mill Creek. Debtor filed Chapter 11 on June 23, 2010. This Court is unaware of any other litigation filed against the County related to this transaction. Debtor's original Schedule B - Personal Property, valued all of Debtor's personal property at $1,136.17. Schedule B, Case Dckt. No. 1 (Jun. 23,

2010). Debtor later amended that schedule to reflect a claim against the County, listing this claim as having a value "To Be Determined." <u>Amended Schedule B</u>, Case Dckt. No. 14 (Jul. 15, 2010). More than five months later, on December 31, 2010, Debtor filed this adversary proceeding. <u>Complaint</u>, A.P. Dckt. No. 1-1. In essence, Debtor alleges that the County:

> 1) represented to OADG that it would provide sewer and water to the Property,
> 2) so the lender would provide a loan commitment to OADG,
> 3) so the County could use that loan commitment to meet the federal requirements,
> 4) so the County could receive federal funds,
> 5) for use on other projects.

The Complaint names Effingham County, the Effingham County Board of Commissioners, Myra Lewis in her official capacity, Jeffrey Utley in his official capacity, Reginald Loper in his official capacity, Verna Ziegler in her official capacity, and Robert Brantley in his official capacity. <u>Id.</u> at p. 1. The Complaint alleges breach of contract, unjust enrichment, promissory estoppel, fraud, and injuries to real estate. <u>Id.</u> at pp. 19-26. The Complaint requests mandamus, specific performance, quantum meruit, actual damages, punitive damages, and attorneys' fees. <u>Id.</u> at pp. 18-27.

Defendant Effingham County raised affirmative defenses, moving to dismiss the case for failure to state a claim upon which relief can be granted. <u>Motion</u>, A.P. Dckt. No. 11 (Feb. 17, 2011). The County raised the defenses of untimely *ante litem* notice, sovereign

immunity, and multiple defenses specific to the counts in the Complaint. Id. OADG filed a Motion to Amend (A.P. Dckt. No. 27 (Mar. 25, 2011)) and concurrently filed a Response to the County's Motion to Dismiss. Response, A.P. Dckt. No. 26 (Mar. 25, 2011). However, the Response filed by OADG presupposed the permission to amend the Complaint, and it failed to address all of the County's defenses. In the Proposed Amended Complaint (which has not yet been approved by this Court), OADG seeks to add parties, add some causes of action and remove some causes of action. The Proposed Amended Complaint names Effingham County, the Effingham County Board of Commissioners, Robert Brantley, David Crawley, Myra Lewis, Jeffrey Utley, Verna Phillips, C.D. Ziegler, and Steve Liotta individually and in their official capacities; Vera Jones, Phil Keiffer, and Steve Mason as a current members of the Board of Commissioners, and Reginald Loper in his official capacity as Commissioner. Proposed Amended Complaint, A.P. Dckt. No. 26-1 (Mar. 25, 2011).

The Proposed Amended Complaint alleges breach of contract, unjust enrichment, promissory estoppel, fraud, conspiracy to commit fraud, negligence, negligent misrepresentations, tortious interference with business relations, and tortious interference with contractual relations. Id. at pp. 24-36. The Proposed Amended Complaint requests mandamus, specific performance, quantum meruit, actual damages, punitive damages, and attorneys' fees. Id. at pp. 23-36.

Gregg Howze, Inc., the entity which purchased the Property from Mill Creek Hunting Preserve, Inc., and which sold the Property to OADG, is not named as a party in

either iteration of the Complaint.

## CONCLUSIONS OF LAW

<u>Jurisdiction</u>

28 U.S.C. § 1334(b) provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The district courts may, if they so choose, refer a proceeding to the bankruptcy court if the proceeding is "under" the Bankruptcy Code, or if the case is "arising in," "arising under," or "related to" a case under the Bankruptcy Code. 28 U.S.C. § 157(a).

The District Court for the Southern District of Georgia issued an order referring "[a]ll cases under Title 11 U.S.C. and all proceedings arising under Title 11 U.S.C. or arising in or related to a case under Title 11 U.S.C." to the Bankruptcy Court of the Southern District of Georgia. <u>Order</u>, July 13, 1984 (Alaimo, C.J.). Accordingly, this Court may exercise full judicial power over "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). However, 28 U.S.C. § 1334(c)(1) provides in relevant part that:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

This abstention provision clearly provides authority for a district court—and pursuant to the referral, the bankruptcy court—to abstain from hearing a case in deference to the state court system if certain factors (discussed below) are met.

It is widely accepted that "[a] court may act *sua sponte* to remand a case on grounds of permissive abstention pursuant to Section 1334(c)(1)." Fuller v. A.W. Chesterton, Inc., 2009 WL 2855368, *2 (S.D. Ill. 2009) (citing In re Gober, 100 F.3d 1195, 1207 n. 10 (5th Cir. 1996); In re Cockings, 195 B.R. 915, 917 n. 3 (Bankr. E.D. Ark. 1996); In re Roddam, 193 B.R. 971, 975 n. 3 (Bankr. N.D. Ala. 1996); Scherer v. Carroll, 150 B.R. 549, 552 (D. Vt. 1993); and In re Richmond Tank Car Co., 119 B.R. 124, 125 (S.D. Tex. 1989)). I choose to address the issue of abstention *sua sponte*.

Factors for Permissive Abstention

Mandatory abstention under 28 U.S.C. § 1334(c)(2) requires the existence of a pending state court action, but that is only one factor to be considered for Permissive abstention under 28 U.S.C. § 1334(c)(1). This Court held in Rayonier Wood Products, L.L.C. v. Scanware, Inc. and Finscan, Oy, that the factors in considering abstention and the factors in considering remand are similar, and that those factors include:

> (1) the effect of abstention on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court

or other non-bankruptcy court; (5) the basis of bankruptcy jurisdiction, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action.

Rayonier, 411 B.R. 889, 897-98 (Bankr. S.D. Ga. 2009) (Davis, J.) (citing cases). Having reviewed these non-exclusive factors in analyzing this case, I find compelling reasons to abstain.

1) There is no effect on the efficient administration of the bankruptcy estate. The Chapter 11 petition was filed on June 23, 2010. Petition, Case Dckt. No. 1. The Monthly Operating Reports filed in this case show total disbursements (less U.S. Trustee Fees) of $113.94, all of which are bank charges. March Monthly Operating Report, Case Dckt. No. 56 (Apr. 29, 2011). This case is a single asset real estate case. Schedules A & B, Case Dckt. No. 1.[2] Debtor has neither filed a plan nor made any interest payment within the time parameters of 11 U.S.C. § 362(d)(3). Accordingly, the efficient administration of

---

[2] While Debtor's Schedule A lists two pieces of real estate, those properties are adjacent and constitute a "single property or project" for purposes of 11 U.S.C. § 101(51B).

AO 72A
(Rev. 8/82)

9

Debtor's case will not be impaired because Debtor is not actively or timely pursuing reorganization. The case is essentially dormant and abstention will therefore have no effect on the efficient administration of this case.

2) State law issues predominate this case. In fact, in both Debtor's Complaint and Proposed Amended Complaint, Debtor asserts no federal question whatsoever. All causes of action are questions of state law. <u>Complaint</u>, A.P. Dckt. No. 1-1; <u>Proposed Amended Complaint</u>, A.P. Dckt. No. 28-1.

3) The issues raised by Debtor in the Complaint do not implicate, precisely speaking, unsettled questions of Georgia law. However, the lawsuit is complex and raises difficult factual and legal issues. Between the two iterations of the Complaint Debtor alleges breach of contract, unjust enrichment, promissory estoppel, fraud, injuries to real estate, conspiracy to commit fraud, negligent misrepresentations, negligence, tortious interference with business relations, and tortious interference with contractual relations. The two iterations of the Complaint request relief in the form of actual damages, mandamus, specific performance, quantum meruit, punitive damages, and attorneys' fees. The Complaints name Effingham County, the Effingham County Board of Commissioners, Robert Brantley individually and in his official capacity, David Crawley individually and in his official capacity, Myra Lewis individually and in her official capacity, Jeffrey Utley individually and in his official capacity, Verna Phillips [Ziegler] individually and in her official capacity, Hubert Sapp individually and in his official capacity, C.D. Ziegler individually and in his

official capacity, Steve Liotta individually and in his official capacity, Vera Jones as a current member of the Board of Commissioners, Phil Keiffer as a current member of the Board of Commissioners, Steve Mason as a current member of the Board of Commissioners, and Reginald Loper in his official capacity as Commissioner. Id.

To further complicate matters, the Complaint is a typical "shotgun pleading," expressly repleading and incorporating all prior allegations in each successive count. Id. Each count reasserts all allegations—from all previous counts—against all defendants. The result is such that some counts contain irrelevant and even contradictory allegations and assertions.[3] See Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 979 n. 54 (11th Cir. 2008) (noting that the Eleventh Circuit Court of Appeals has "explicitly condemned shotgun pleadings upward of fifty times" since 1985) (listing cases); Anderson v. District Bd. of Trustees of Cent. Florida Cmty. Coll., 77 F.3d 364 (11th. Cir. 1996) (noting that shotgun pleadings make it "virtually impossible to know which allegations of fact are

---

[3] The Complaints are replete with these "repleadings and incorporations," some of which I will detail below for a sampling of the inconsistency within the Complaints:

1. Debtor alleges in its Proposed Amended Complaint, A.P. Dckt. No. 28-1 ¶164 that all Defendants showed "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to the consequences." Debtor repleads and incorporates that paragraph into its count of Negligent Misrepresentations, in which Debtor alleges that all Defendants "negligently supplied false information and made false assurances." Id. at ¶ 176. Allegations of malice, willfulness, and fraud have no place in a count alleging negligence.

2. Debtor does not distinguish at any point in either Complaint between any of the defendants, alleging each count and each basis for relief against every defendant despite clear legal authority limiting the application of some counts and relief against some of the defendants.

These two examples are merely illustrative. There is a great deal of overlap, repetition, and contradiction in the Complaints.

intended to support which claim(s) for relief," and holding that defendants facing such a pleading should move for a more definite statement pursuant to Fed. R. Civ. P. 12(e)). Defendants did this Court no favors—moving for dismissal, citing a multitude of defenses and immunities (including untimely *ante litem* notice, sovereign immunity, and defenses specific to the causes of action), and leaving this Court to attempt to analyze each defense to each claim and each Defendant. Accordingly, while the issues raised are not necessarily unsettled, the litany of issues, defenses, and parties make this an extraordinarily difficult state law case.

4) This Court is unaware of the existence of a pending state law proceeding and the parties have not directed this Court's attention to one.

5) There is no basis for bankruptcy jurisdiction other than 28 U.S.C. § 1334.

6) The proceeding has more "relatedness" than "remoteness" to the bankruptcy case. It is related to the bankruptcy case because the claim (as pleaded) represents a significant asset which might prove to enhance the value of the estate.

7) However, this is not a core proceeding. This Court has jurisdiction pursuant to 28 U.S.C. § 157(a). That Code section provides that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for

the district." The adversary proceeding is not a "case under title 11." The issues raised by Debtor do not "arise under" title 11, as they are not claims specific to the Bankruptcy Code. They do not "arise in" title 11, as they are not matters which have sprung into existence because of the existence of a bankruptcy case. They are merely "related to" a case under title 11, and accordingly are treated as described in 28 U.S.C. § 157(c)(1).[4] They might arguably be considered core proceedings under 28 U.S.C. § 157(b)(2)(O): "other proceedings affecting the liquidation of the assets of the estate," under a broad reading of that phrase. But such a broad interpretation—which would be required to vest final authority to decide this case in the bankruptcy court—would trespass the permissible constitutional limits on this Court set by Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982). In Marathon, the Supreme Court held that adjudication of pre-petition state law claims against a non-party, independent of and antecedent to the reorganization, was beyond the scope of judicial power which could constitutionally be assigned to a bankruptcy court. Id. at 84; *see also* In re Winimo Realty Corp., 270 B.R. 108, 120 (S.D.N.Y. 2001) ("In Marathon, the Supreme Court ruled that it is unconstitutional for 'a bankruptcy court to adjudicate a state breach of contract claim brought by a debtor against a defendant who has not filed a claim with the Bankruptcy Court, when the contract was executed prior to the filing of the bankruptcy petition.'") (listing cases); Tultex Corp. v. Freeze Kids, L.L.C., 252 B.R. 32, 36-37 (S.D.N.Y. 2000) ("[F]ollowing Marathon, it is well-settled that Article III prohibits

---

[4] "A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

bankruptcy courts from adjudicating pre-petition contract claims—that is, claims arising prior to the commencement of the debtor's bankruptcy—against a nonparty to the bankruptcy.").

8) There is no difficulty presented by the need to sever state law claims from bankruptcy matters because all issues presented are state law issues.

9) This Bankruptcy Court's docket—like virtually every other bankruptcy court's docket in the country—is full and unlikely to be alleviated, given current economic conditions. Nevertheless, I am mindful of the sometimes overwhelming burden of civil litigation in our brother and sister courts in the state system. Because I know that state courts also have full dockets, I would not base my ruling to any significant degree on this Court's caseload. However, as already discussed, the issues here are purely matters of state law. As such, it makes little sense for a bankruptcy court to attempt to address those issues. They are best left in our federal / state system to courts with the greatest expertise to make those decisions.

10) As mentioned above, according to Debtor, its claim first arose in July of 2006, when water and sewer were not provided to the Property by the time suggested in the March 1, 2005, letter. Even though Debtor alleges fraud which prevented it from discovering the cause of action, it is noteworthy that the claim was first listed on Debtor's Amended Schedule B almost a month after the petition was filed, and that no litigation was filed until December 31, 2010, more than six months after the petition was filed. <u>Amended</u>

Schedule B, Case Dckt. No. 14. This claim could have been brought in state court at any time prior to the bankruptcy, perhaps as early as July of 2006.

11) If the suit were to continue in this Court, the parties would have a right to a jury trial. U.S. CONST. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."); Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989) (noting that "legal claims are not magically converted into equitable issues by their presentation to a court of equity . . . .") (punctuation omitted). A jury trial can only be afforded in this Court "if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 28 U.S.C. § 157(e). There has been no such designation by the United States District Court to the United States Bankruptcy Court for the Southern District of Georgia.[5]

12) None of the fourteen named Defendants in this case are scheduled as parties in the bankruptcy case.

13) Comity with state courts has already been addressed. It is clear that out of respect for the honored position of state courts in our system of government it is appropriate for this matter to be adjudicated there. An underlying issue in this case—bearing on the enforceability of many of the causes of action against many of the Defendants—is the

---

[5] Pursuant to a letter from then Chief District Court Judge B. Avant Edenfield to the undersigned, dated September 18, 1995, bankruptcy courts in this district have not been designated to hold jury trials.

question of state sovereign immunity and the absolute or qualified immunity which individuals derive from that source. Sovereign immunity is a concept derived from the English common law that "no suit or action can be brought . . . [against the King,] even in civil matters, because no court can have jurisdiction over him.'" Alden v. Maine, 527 U.S. 706, 766 (1999) (citing 1 W. Blackstone, Commentaries * 242). It is well understood that the United States of America enjoys that same immunity unless expressly waived. *See e.g.,* Lane v. Pena, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . .") ( listing cases). It is also well understood that the individual sovereign states of the union enjoy the same immunity, except to the extent such immunity was ceded to the federal government in the Constitution or waived by the individual states. Virginia Office for Prot. and Advocacy v. Stewart, 131 S. Ct. 1632, 1637 (2011) ("[W]e have understood the Eleventh Amendment to confirm the structural understanding that States entered the Union with their sovereign immunity intact . . . ."). Georgia has adopted its sovereign immunity in the Georgia Constitution and each constituent county is likewise protected. GA. CONST., Art. 1, § 2, ¶ IX(c) ("The state's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies.").

Deciding the scope of state sovereign immunity is intrinsically a matter best left to each state's court system, unless a federal right is implicated. No such federal right is implicated in this case. For that reason it would be improper for a United States

Bankruptcy Court, which lacks the constitutional authority to exercise the full judicial power of the United States set forth in Article III, to tread in that area. *See generally* <u>Northern Pipeline Const. Co. v. Marathon Pipe Line Co.</u>, 458 U.S. 50 (1982). Because the issue of state sovereign immunity has been raised, the state courts have a primary interest in adjudicating this case.

14) Abstention will not prejudice any party. If anything, this case can be managed more efficiently in state court. Because this is not a core proceeding under 28 U.S.C. § 157(b)(2), findings of fact and conclusions of law made by this Court must be submitted to the district court. 28 U.S.C. § 157(c)(1). The district court then reviews the case *de novo*, and enters findings of fact and conclusions of law. This two-step process is likely to be more expensive and time-consuming than submitting the issue to the state court system of Georgia in the first instance.

## ORDER

In light of the foregoing discussion, abstention is unquestionably the proper response. It is therefore ordered that I ABSTAIN from conducting further proceedings in this matter, and this adversary proceeding is DISMISSED.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 16th day of May, 2011.